**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**CIVIL CASE NO. 5:20-cv-00202-MR**

| | | |
|---|---|---|
| **TREVIS J. BUTTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM OF** |
| **vs.** | ) | **DECISION AND ORDER** |
| | ) | |
| **DUSTIN GOINS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Defendants' Motion for Summary Judgment [Doc. 49] and the Defendants' Motion for Sanctions and for Spoliation [Doc. 51].

## I. BACKGROUND

The Plaintiff Trevis J. Button,[1] proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983 and North Carolina law, addressing an incident that allegedly occurred while he was an inmate at the Alexander Correctional

[1] According to the North Carolina Department of Adult Corrections' (NCDAC) website, the Plaintiff is also known by the nickname "Trizzy." See https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=1214365&searchLastName=button&searchFirstName=trevis&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1 (last accessed July 24, 2023); Fed. R. Evid. 201.

Institution.[2] [See Doc. 1: Complaint]. The Plaintiff's verified Complaint passed initial review against Defendants Goins and Robbins for the use of excessive force, and against Defendant Carroll for failure to intervene. [See Doc. 13: Order on Initial Review]. The Plaintiff seeks a declaratory judgment, injunctive relief, a total of $100,000 in compensatory damages, a total of $150,000 in punitive damages, a jury trial, costs, and any additional relief the Court deems just, proper, and equitable. [Doc. 1: Complaint at 9].

The Defendants filed a Motion for Summary Judgment [Doc. 49: MSJ] on the day that dispositive motions were due. The Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 55: Roseboro Order]. The Plaintiff has not responded to the Defendants' Motion, and the time to do so has expired. These matters are ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

[2] The Plaintiff was released from NCDAC on August 12, 2021. [See Doc. 14 (Notice of Change of Address)].

judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the

nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version

> of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

## III. FACTUAL BACKGROUND

Viewing the forecast of evidence in the light most favorable to the Plaintiff, the following is a recitation of the relevant facts.

On August 10, 2020 the Plaintiff was housed in the Alexander CI's Restrictive Housing Unit (RHU) on Self-Injurious Behavior (SIB) precautions. [Doc. 1: Complaint at 3; Doc. 53-3: Goins Decl. at ¶ 4]. The Plaintiff covered his cell camera in order to have officers come to his cell. The Plaintiff asserts that he did so in order to ask about contacting mental health staff. [Doc. 1: Complaint at 3]. Sergeant Goins noticed that the Plaintiff's cell camera was covered at approximately 1:12 p.m. [Doc. 53-3: Goins Decl. at ¶ 4]. Approximately two minutes later later, Sergeant Goins, Sergeant Robbins, and Officer Carroll went to the Plaintiff's cell. The Defendants aver that they observed the Plaintiff through the window in his cell door hitting head against the wall. The Plaintiff was ordered to come to the door to submit to cuffs, and the Plaintiff complied. [Doc. 1 Complaint at 3-4; Doc. 53-3: Goins Decl. at ¶ 4; Doc. 53-4: Carroll Decl. at ¶ 4; Doc. 53-5: Robbins Decl. at ¶ 4].

The Plaintiff asserts (and the Defendants deny) that as soon as the cell door opened, Sergeant Goins pushed the Plaintiff into the cell, grabbed him

by the hair, and slammed his face into the wall, causing a gash in his forehead.[3] [Doc. 1: Complaint at 4]. Sergeant Goins then pushed the Plaintiff further into the cell and pinned him against the wall.[4] [Id.]. Sergeant Robbins struck the Plaintiff's head, face, and ribs.[5] [Id.]. Approximately 18 seconds[6] after the officers entered the cell, Officer Carroll uncovered the camera. At this time the Plaintiff was standing near the cell door by the sink, adjacent to where he had submitted to cuffs. A blanket and what appears to be wet paper were thrown out of the cell into the hallway.[7] [Id.]. The officers left the cell and the Plaintiff's cuffs were removed. At this time the Plaintiff

[3] The Defendants deny striking the Plaintiff. According to the Defendants, the Plaintiff was hitting his head against the cell wall when they arrived at his cell. [Doc. 53-3: Goins Decl. at ¶¶ 4-5; Doc. 53-4: Carroll Decl. at ¶¶ 4-5; Doc. 53-5: Robbins Decl. at ¶¶ 4, 6].

[4] According to the Defendants, when the cell door was opened, the Plaintiff walked into the cell and stood by the sink. [Doc. 53-3: Goins Decl. at ¶ 4; Doc. 53-4: Carroll Decl. at ¶ 4; Doc. 53-5: Robbins Decl. at ¶ 4]. The officers stepped into the cell and Officer Carroll placed his hand up to prevent the Plaintiff from exposing officers to his blood as the Plaintiff attempted to turn towards the officers. [Id.].

[5] The Defendants deny that there was any use of force on the Plaintiff. [Doc. 53-3: Goins Decl. at ¶ 5; Doc. 53-4: Carroll Decl. at ¶ 5; Doc. 53-5: Robbins Decl. at ¶ 6].

[6] The Court derives this passage of time by from its review of the two videos submitted by the Defendants (and discussed in greater detail *infra*). According to these videos, the Plaintiff's cell door was opened at 1:14:50 and the camera was cleared by the removal of the toilet paper that was thrown into the hallway at 1:15:08, a lapse of 18 seconds. [Doc. 53-10].

[7] According to the Defendants, the officers and the Plaintiff stood just inside the cell door near the sink while Sergeant Goins removed the Plaintiff's blanket and uncovered the cell camera. [Doc. 53-3: Goins Decl. at ¶ 4; Doc. 53-4: Carroll Decl. at ¶ 4; Doc. 53-5: Robbins Decl. at ¶ 4].

had a bleeding wound on his forehead. [Id.; Doc. 53-3: Goins Decl. at ¶ 4; Doc. 53-4: Carroll Decl. at ¶ 4; Doc. 53-5: Robbins Decl. at ¶ 4]. The Plaintiff then stood in view of the cell camera and pointed to his face, displaying the blood on his forehead. [Doc. 1: Complaint at 4; Doc. 53-5: Robbins Decl. at ¶ 5]. Other inmates started yelling to gain the attention of other officers because the Plaintiff needed medical attention.[8] [Doc. 1: Complaint at 4]. The Defendants testify that they have no ill feelings towards the Plaintiff and no desire or any reason to cause him harm. [Doc. 53-3: Goins Decl. at ¶ 6; Doc. 53-4: Carroll Decl. at ¶ 6; Doc. 53-5: Robbins Decl. at ¶ 7].

The Plaintiff was taken to medical within 5 or 10 minutes after the incident by different officers, where he was assessed and photographs were taken of his bloody forehead. [Doc. 1: Complaint at 4-5; Doc. 53-7: MSJ Ex 6A at 21-22]. Medical staff used saline to clean a small amount of blood from a superficial abrasion to the Plaintiff's forehead, and he was released back to his housing unit. [See Doc. 53-14: MSJ Ex 8 at 10].

[8] Sergeant Goins states that he asked the Plaintiff whether he would like medical treatment due to blood on his forehead, and the Plaintiff responded affirmatively. [Doc. 53-3: Goins Decl. at ¶ 4]. As the Plaintiff's restraints were removed and the officers began to walk away, other inmates started yelling, "now show them your head on the camera and you got their ass." [Id. at ¶ 5; Doc. 53-4: Carroll Decl. at ¶ 5; Doc. 53-5: Robbins Decl. at ¶ 5].

The Defendants have submitted video files containing footage from August 10, 2020 on the Plaintiff's in-cell camera [Doc. 53-9: MSJ Ex C],[9] and from the housing unit outside the Plaintiff's cell [Doc. 53-10: MSJ Ex D],. Pursuant to NCDAD Policy and Procedure, video cameras are used to record anticipated allegations of use of force incidents and video footage is preserved for litigation purposes. [See, e.g., 53-15: MSJ Ex 9 at 15-16 (Use of Force Policy & Procedures, F.1500)]. The video footage from the Plaintiff's cell shows the following events:

| | |
|---|---|
| 12:59:57 | The Plaintiff uses a blanket to obscure the cell camera |
| 01:04:47 | The Plaintiff removes the blanket from his cell camera |
| 01:07:28 | The Plaintiff uses wet toilet paper to obscure the cell camera |
| 01:15:12 | The camera is cleared; the Plaintiff is standing near the doorway with an officer's hand on the back of his neck, then the Plaintiff continues to stand with his back to the cell door while the officers are outside the camera's view |
| 01:15:52 | The Plaintiff, uncuffed, walks to look into the mirror over his sink then turns to the camera and points to blood running from the center of his forehead |
| 01:18:16 | The Plaintiff stands on his toilet and appears to have a conversation through the wall vent |

[9] A jump in time midway through Exhibit C is due to the camera having shut off automatically when the Plaintiff covered it; this automatic shutoff feature of the recording system saves storage space. [Doc. 53-6: Duncan Decl. at ¶ 5].

01:20:39 The Plaintiff faces the camera and points to his bloody forehead again

01:23:32 The Plaintiff faces the camera and points to his bloody forehead again

The video footage from the Plaintiff's housing unit shows the following events:

1:14:02 Three officers enter the housing unit and gather outside the Plaintiff's cell door

1:14:50 The cell door is opened and all three officers enter

1:14:59 A blanket is thrown into the hallway

1:15:06 Toilet paper is thrown into the hallway

1:15:08 An officer jumps to reach the camera, exits the cell, and throws wet toilet paper to the hallway floor

1:15:11 The second and third officers exit the cell

1:15:32 The cell door is closed

1:15:52 An officer removes the Plaintiff's handcuffs through the door slot

01:16:27 The officers leave the housing unit

## IV. DISCUSSION

### A. Motion for Summary Judgment

For the purposes of summary judgment, a plaintiff cannot create or manufacture an issue of fact by his own testimony or act. See, e.g., Stevenson v. City of Seat Pleasant, 743 F.3d 411, 422 (4th Cir. 2017) (noting

that plaintiff cannot create issue of fact by submitting an affidavit contradicting plaintiff's own prior testimony); Faircloth v. United States, 837 F.Supp. 123, 127 (E.D.N.C. 1993) ("plaintiffs cannot create an issue of material fact in order to defeat summary judgment by presenting conflicting testimony among their own witnesses"). Here, the Plaintiff's entire contention rests on the question of what occurred in the 18 seconds from the entry of the Defendants into his cell and the uncovering of the camera in the Plaintiff's cell. The cameras in Alexander are placed for the purpose of documenting what actually occurs during alleged excessive force events. The Plaintiff's actions in deliberately covering up the camera in his cell, however, thwarted that purpose, and as a result the Plaintiff argues that there is a genuine issue of fact as to whether an excessive force event occurred during that crucial 18 seconds.

In his Verified Complaint, the Plaintiff sets forth an elaborate set of events that occurred in that 18 seconds. This claims seems all the more fantastic considering that when the camera was uncovered, the Plaintiff was standing next to the cell door near the sink, right by where the Plaintiff had been when the Defendants entered his cell, a location that seems inconsistent with the Plaintiff's story.

The Court concludes as a matter of law that the Plaintiff has failed to present a forecast of evidence sufficient to survive summary judgment. First, no reasonable jury could find that the series of events the Plaintiff claims could have occurred in the very short period in question, particularly considering where the Plaintiff was found standing upright at the moment the camera is uncovered. Second, the Plaintiff cannot manufacture an issue of fact by his own actions. The Plaintiff attempts to do so here by covering the camera for the crucial moment. As a result, the Plaintiff's claim is both factually implausible and legally unsustainable.

**B. Motion for Sanctions**

The Defendants have also moved for the dismissal of the Plaintiff's claim as a sanction for his misconduct in covering the camera (spoliation) and in tampering with potential witnesses. [Doc. 51: Motion for Sanctions]. Although the Court ordered the Plaintiff to respond to the Defendants' motion and to show cause why sanctions should not be imposed [Doc. 59: Order], the Plaintiff has not responded to the Defendants' motion. Even though the Court disposes of the Plaintiff's claim on the merits, the Court will address this motion for sanctions as an alternative basis for its ruling.

Courts have inherent power to impose sanctions on a party for bad faith conduct that offends the legal process, including the outright dismissal

of the offending party's claims. Chambers v. NASCO, 501 U.S. 32, 46 (1991) (explaining that inherent power is not displaced by statutory sanctions, because where "each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses"); Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 107 (2017) ("Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process.") (citation and internal quotation marks omitted). Further, the Federal Rules of Civil Procedure allow courts to impose appropriate sanctions, including dismissal, for violations of the Rules. See also Fed. R. Civ. P. 11(c) (a court may impose an appropriate sanction that is sufficient to deter repetition of conduct violating Rule 11(b); Fed. R. Civ. P. 37(e) (if a court finds that a party has been prejudiced by the loss of electronically stored information, and that the party acted with the intent to deprive another party of the information's use in the litigation, it may, *inter alia*, dismiss the action or enter a default judgment); Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001) (discussing dismissal as a spoliation sanction).

When deciding whether to dismiss an action with prejudice as a sanction, a court must consider:

> (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest.

United States v. Shaffer Equipment Co., 11 F.3d 450, 463-64 (4th Cir. 1993).

As to spoliation, the Plaintiff admits that he purposefully covered his cell camera so that officers would come to his cell. The alleged use of force occurred inside the cell and was not recorded and preserved for litigation purposes because the camera was covered. The covered camera deprived the Defendants of objective video footage that would have been preserved for litigation and which would have conclusively demonstrated that the Plaintiff injured himself by purposefully banging his head into the wall, and that no use of force occurred.

The Defendants also assert that the Plaintiff has tampered with witnesses. Offenders are permitted to communicate with nonincarcerated family and friends through various means including phone calls, mail, and a form of electronic messaging called TextBehind. [Doc. 53-11: Surratt Decl.

at ¶ 2]. Inmate communications are routinely monitored and stored. [Doc. 53-11: Surratt Decl. at ¶ 2].

The Plaintiff communicated with his mother, Veronica Lewis, and with inmate Brandon Williams through his mother, about the incident at issue beginning in May 2022 while discovery in the instant case was underway. [See Doc. 53-11: Surratt Decl. at ¶¶ 2-3; Doc. 53-12: MSJ Ex 7A at 18 (Plaintiff telling his mother on May 23, 2022 that he needs her to find Branden and send him a letter on the application TextBehind].

On May 23, 2022, a TextBehind message from the Plaintiff to his mother states: "SUPER IMPORTANT I NEED you to send them letters to them 2 witnesses on txtbehind **how I wrote them**." [Doc. 53-12: MSJ Ex 7A at 9] (emphasis added). On May 24, 2022, a communication from the account of Jonathan Jones to the Plaintiff's mother states to "tell trevis" that he "never lied to" the Plaintiff's mother, and "**I still will help y'all on the suit deal as long as you hold your end of the deal up**…." [Doc. 53-12: MSJ Ex 7A at 10] (emphasis added). On May 30, 2022, the Plaintiff instructed his mother to write a letter to inmate Williams and another inmate about the case stating *inter alia* "If he wins, he's gotcha." [Doc. 53-12: MSJ Ex 7A at 19]. The Plaintiff's mother complied with the Plaintiff's instructions and sent the following TextBehind message to inmate Williams on May 30, 2022:

> Hey Branden my name is Veronica Lewis. Trevis (Trizzy) you was at Alexander with him when they beat him up in August 2020. You was in the cell above him & heard everything that was happening is how he said you could remember him. He just wanted to let you know that he was going to court over that and that you would be called as a witness. He said to please just tell it exactly like it happened not to add or change anything. **Also tha[t] if he wins he's got you**….

[Doc. 53-13: MSJ Ex 7B at 3-4] (emphasis added).

On June 5, 2022, the Plaintiff sent a TextBehind message to his mother, for her to copy and paste to Williams, stating:

> **You already know I got you dog**, I been working on this case for almost 2 years now. **I got em**. I'm sending orders for Po Boy and B Love[10] to come too. I don't have an exact date yet but as soon as I do I'll let ya know. **Don't try to add nothing to it just tell it exactly how it happened. You didn't see you just heard it happen a thud and me screaming for them to stop and when I was walking outta the block I turned back so y'all could see and my face was covered in blood.** Keep your head up dog. If you got any questions about anything though, write my Mama. Be good bro. Head to the sky. God Bless.

[Doc. 53-12: MSJ Ex 7A at 20] (emphasis added).

The Plaintiff does not dispute the Defendants' evidence demonstrating that the Plaintiff tampered with a potential witness during the discovery period and until shortly before the dispositive deadline motion in the instant case. Communications between the Plaintiff, his mother, and another

---

[10] Po Boy and B Love are nicknames for offenders Chris Leach and Brandon M. Williams, respectively. [Doc. 53-12: MSJ Ex 7A at 21-22].

prisoner demonstrate that the Plaintiff attempted to secure favorable testimony to support his present Eighth Amendment claims, by directing the content of the inmate's prospective testimony and by offering payment in exchange for that testimony.

The Plaintiff has not attempted to demonstrate that he did not intentionally spoliate evidence by covering the camera, that no witness tampering occurred, or that dismissal is not warranted. Further, he has not suggested any alternative sanctions that the Court may impose that would adequately address his conduct.

The Plaintiff's outrageous conduct in attempting to purchase favorable testimony from a witness has cast such serious doubt on the allegations contained in his verified Complaint that it has completely undermined his allegations and the fairness of the judicial process. See generally Fed. R. Civ. P. 11(b), (c). The clear and convincing evidence further demonstrates that the Plaintiff intentionally deprived the Defendants of the use of in-cell video footage in this litigation, and the Defendants were prejudiced because they were permanently deprived of objective evidence that would have shown, conclusively, whether there was a use of excessive force inside the cell. The severity of the Plaintiff's repeated, deliberate, and flagrant conduct, his bad faith, the public interest, the damage to the judicial process, the

irrevocable prejudice to the Defendants, and the unavailability of other sanctions to rectify the Plaintiff's wrongs, all would warrant dismissal of this action, even if summary judgment were not appropriate. See Shaffer, 11 F.3d at 462 (recognizing that "when a party deceives a court or abuses the process at a level that it is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process, the court has the inherent power to dismiss the action"); see, e.g., Dewitt v. Ritz, 2021 WL 915146 (D. Md. March 10, 2021) (concluding that a plaintiff's abuse of the judicial process in attempting to purchase favorable testimony was so extreme as to forfeit his right to due process); see also Fed. R. Civ. P. 11, 37.

## IV.  CONCLUSION

For the reasons stated herein, the Defendants' Motion for Summary Judgment is granted, and this action is dismissed with prejudice. Alternatively, the Court finds that the Plaintiff's deliberate spoliation of evidence and witness tampering would warrant dismissal of this action, even if summary judgment were not appropriate. However, because the Plaintiff's action is being disposed of on the merits, the Defendants' Motion for Sanctions will be denied as moot.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment [Doc. 49] is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

2. Defendants' Motion for Sanctions and for Spoliation [Doc. 51] is **DENIED AS MOOT.**

The Clerk is respectfully directed to mail a copy of this Order to the Plaintiff and to terminate this action.

**IT IS SO ORDERED.**

Signed: September 5, 2023

Martin Reidinger
Chief United States District Judge